*Southern District*

# No. 138

## SUEANNE L. TELLES, ppa MANUEL TELLES
## v.
## THERESA M. MACEDO

Argued: May 19, 1975. Decided: February 25, 1977.

Case tried to *Silva, J.,* in the Second District Court of Bristol. No. 39275.

Present: Lee, P.J.; Tamkin, Hurd, J.J.

**Hurd, J.** The defendant appeals from the finding of the trial justice that the plaintiff, a minor at the time this action was commenced, suffered "serious and permanent disfigurement" wthin the meaning of G.L.c. 231, §6D, a section of the so-called "no-fault" insurance

act, as the restult of having been struck by the defendant's motor vehicle.[1] The court found for the plaintiff in the amount of $1,600.00.

Included in the evidence educed at the trial were the reports of two examining physicians, introduced by agreement of the parties and thereafter made a part of the report of the trial justice.

The report of Dr. Novello E. Ruggerio, a plastic surgeon, sets forth the results of his examination of the plaintiff conducted on January 6, 1975, two years after the accident which occurred on January 22, 1973. The pertinent portion of that report is as follows:

"At the present time, her chief complaint is scar deformities involving the back in the lumbar area.

Examination reveals two (2) scars just to the right of the vertebra in the lumbar area measuring approximately 2½cm. by 2cm. each. These areas show increased pigmentation.

---

[1] As appearing in St. 1970, c. 670, §5. "In any action of tort brought as a result of bodily injury, sickness or disease, arising out of the ownership, operation, maintenance or use of a motor vehicle within this commonwealth by the defendant, a plaintiff may recover damages for pain and suffering, including mental suffering associated with such injury, sickness or disease, only if the reasonable and necessary expenses incurred in treating such injury, sickness or disease for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral expenses are determined to be in excess of five hundred dollars unless such injury, sickness or disease (1) causes death, or (2) consists in whole or in part of loss of a body member, or (3) consists in whole or in part of permanent and serious disfigurement, or (4) results in such loss of sight or hearing as is described in paragraphs (a), (b), (c), (d), (e), (f), and (g) of section thirty-six of chapter one hundred and fifty-two or (5) consists of a fracture. (Emphasis added by Reporter).

"We do not feel that any surgical procedure would improve the appearance of these scars and feel that these are permanent and in view of the fact that these are approximately two years old, we do not expect any further changes in their appearance. We might mention that you could expect these scars to show increase in pigmentation when exposed in the sunlight. Although they are not in an exposed area when the patient is fully clothed, these would be exposed in the summer on the beach and may cause the patient some problems, as they are quite noticeable and may be subject to comments on the beach.

In summary, Miss Telles has two (2) scar deformities involving the lumbar area which are permanent in nature and which may become more noticeable in the summertime when exposed to sunlight and which we feel cannot be improved with surgery."

The defendant now concedes that the scars are permanent but at the close of the evidence timely requested the trial justice to rule that the evidence required a finding that "any scarring the plaintiff received as a result of the injuries in this accident were (sic) not "serious" under the terms of the statute, that is, G.L.c. 231, §6D." This request was denied by the trial justice, who made the following findings of fact:

"I find that the plaintiff suffered permanent and serious disfigurement as a result of being struck by a vehicle operated by the defendant; that the total damage suffered by the plaintiff amounted to $2,000.00; that both parties were negligent, plaintiff to extent of 20% and defendant to the extent of 80%."

We find no error.

The defendant having conceded that the plaintiff's scars are permanent now argues that their size and

location does not constitute "serious disfigurement" as contemplated by G.L.c. 231, §6D. In support of his argument the defendant calls our attention to G.L.c. 152, §36 (k) of the Workmen's Compensation Act which provides for additional compensation "(f) or bodily disfigurement, an amount which . . . is a proper and equitable compensation, not to exceed six thousand six hundred dollars . . .", and to certain guidelines relating thereto contained in a circular letter dated November 1, 1973 which classifies degrees of disfigurement under §36 (k) of Chapter 152 as "slight", severe" and "very severe" and suggests the percentage of the total amount recoverable for each classification. The defendant cites an example contained in that circular letter which suggests that a discolored linear scar above the waistline was worth $125.00 per inch and below the waistline, $100.00 per inch. Consequently, the defendant argues that the trial justice erred in finding that the disfigurement suffered by the plaintiff was serious rather than slight as suggested by the guidelines set forth in the circular letter. We disagree. G.L.c. 231, §6D (4) refers to section 36 of Chapter 152 and provides for the recovery of damages if the injury results "in such loss of sight or hearing as is described in paragraphs (a), (b), (c), (d), (e), (f) and (g) of section thirty-six of Chapter one hundred fifty-two". Paragraph (4) makes no reference to bodily disfigurement provided by paragraph (k) of section 36 of Chapter 152, because provision for additional compensation for bodily disfigurement under the Workmen's Compensation Act was not made until the enactment of St. 1972, c. 271, two years after the enactment of the no-fault insurance act. The 1972 statute completely rewrote §36 of Chapter 152 and added paragraph (k) which provided for additional compensation for bodily disfigurement. We believe that until such time as the Legislature moves to amend the "no-fault" insurance act by striking out paragraph (3) of §6D and including "bodily disfigurement" under ¶(4), the discretion of the trial

justice in determining the degree of disfigurement suffered by a plaintiff in an action of tort arising out of a motor vehicle accident should not be restudied.

The question whether or not the legislative intent of the "No-fault Insurance Act" was to place strictures on time tested standards of assessing the necessity of medical services rendered under G.L.c. 231, §6D was considered in *Victum v. Martin,* Mass. (1975)[2]. In that case, the plaintiff, who sustained injuries in a motor vehicle accident occurring after the enactment of the "No-fault Insurance Act," submitted only his testimony and itemized medical bills supported by affidavits of two physicians to prove that the medical services rendered were necessary so that the medical expenses having exceeded $500.00 entitled him to recover for pain and suffering. In holding that such evidence was sufficient to permit the trial court, as the trier of fact, to infer that the medical expenses were necessary, the court would not accept the defendant's argument that the jurisdictional limit of $500.00 prescribed by §6D of Chapter 231 was intended to have an "exclusionary effect" in order to further the elimination of nuisance claims for pain and suffering. The court also rejected the defendant's contention that to satisfy the burden of proving the necessity of the medical expenses "competent medical testimony specifically indicating the necessity of the medical service" was required. At page 1037 the court said:

> "We reject the defendant's argument that the Legislature in enacting the no-fault statute intended 'the imposition of severe restrictions upon cases in which recovery for pain and suffering would be allowed' thus rendering totally irrelevant traditional judicial standards for assessing necessity. As we made clear in **Pinnick v. Cleary, supra** at 6, 28,[3] the no-fault statute was not intended to abrogate common law principles of damages, generally: '(T)he Legislature has

[2] Mass. Adv. Sh. (1975) 1032.

[3] 360 Mass. 1, 6, 28 (1971).

acted with extreme caution in altering prior legal rights, changing in only one respect the elements of damage which are recoverable by the victim.' The purpose of the Legislature was to close off 'minor claims for pain and suffering'; it was not the purpose of the Legislature to preclude meritorious claims by imposing rigid standards and a heavy burden of proof unknown to traditional negligence suits for compensation for medical expenses."

Included in the evidence from which the justice could find that there was permanent and serious disfigurement was the report of the plastic surgeon who examined the plaintiff and offered the opinion that her scars were permanent, could not be improved by surgery and could cause "problems" and comments when she went to the beach.

We suggest that in these so-called enlightened times, the trial justice indeed might well have taken notice of the fact that female beachwear has become remarkable for its brevity and paucity of material to the extent that scars, albeit small in dimension, located in the lower lumbar region of the female torso would be noticeable and a source of embarrassment to the bearer.

It is well established that although many elements of damages, including disfigurement, are incapable of precise measurement the trial justice who saw the injured plaintiff and heard the testimony, is in a far better position than we to determine the reasonableness of the finding. *do Canto, et al. v. Ametek, Inc.,* Mass. (1975)[4].

In *Bartley v. Phillips,* 317 Mass. 35 (1944), where the defendant charged that the damages awarded the plaintiff by the trial justice were "greatly disproportionate to the injury proved" the court said, at pages 43-44:

"In this court as an appellate tribunal an award of damages must stand unless to make it or to

[4] Mass. Adv. Sh. (1975) 1591, 1606-7.

permit to to stand was an abuse of discretion on the part of the court below amounting to an error of law . . . (cases cited). An 'abuse of discretion' consists of judicial action (that no conscientious judge, acting intelligently, could honestly have taken . . .' (cases cited). The exercise of discretion, where discretion exists, is not subject to appelate review on a report from a District Court or on exceptions. Only where a question ordinarily discretionary is so clear that discretion is superseded by imperative legal duty can the result be revised . . . (cases cited). 'The field of discretion of the trial judge in these matters is very broad. Only in rare instances can it be ruled that there has been an abuse of discretion amounting to error of law . . .' (cases cited)"

We believe that the foregoing quoted portion of the court's opinion having to do with the discretion of a trial justice in awarding damages applies with equal force to the determination of the degree of seriousness of bodily disfigurement when such is in issue.

The finding of the trial justice as to the seriousness of the disfigurement suffered by the plaintiff did not constitute such an abuse of discretion as to constitute an error of law.

There being no prejudicial error, the report is dismissed.